IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:20-CV-16-D

MONA GILLIAM, )
)
Plaintiff, )
)
v. ) **ORDER**
)
BERTIE COUNTY )
BOARD OF EDUCATION, )
)
Defendant. )

On March 20, 2020, Mona Gilliam ("Gilliam" or "plaintiff") filed a complaint against the Bertie County Board of Education (the "Board" or "defendant") and Dr. Catherine Edmonds ("Edmonds") in her official capacity as former superintendent [D.E. 2]. Gilliam alleges age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq., as amended, retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., as amended ("Title VII"), and a violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1, et seq. See id. ¶¶ 72–115. On May 12, 2020, Edmonds and the Board moved to dismiss Gilliam's complaint [D.E. 10]. See Fed. R. Civ. P. 12(b)(6). On July 9, 2020, the court dismissed the complaint against Edmonds, dismissed Gilliam's request for punitive damages, and allowed the remainder of Gilliam's claims to proceed [D.E. 14].

On July 12, 2021, the Board moved for summary judgment [D.E. 31] and filed a memorandum in support [D.E. 34], a statement of material facts [D.E. 32], and an appendix to the statement of material facts [D.E. 33]. On August 18, 2021, Gilliam responded in opposition [D.E. 36, 37, 38]. On September 1, 2021, the Board replied [D.E. 40]. As explained below, the court grants in part and denies in part the Board's motion for summary judgment.

I.

Gilliam is a former Board employee. See Def.'s Stat. Mat. Facts ("SMF")[D.E. 32] ¶ 1; Pl.'s Resp. to Stat. Mat. Facts ("Resp. to SMF") [D.E. 36] ¶ 1. In 2013, at age 41, Gilliam began working as an administrator in the Bertie County Schools. See SMF ¶ 3; Resp. to SMF ¶ 3. In July 2015, Gilliam executed a four-year administrator contract with the Board that expired on June 30, 2019. See SMF ¶ 4; Resp. to SMF ¶¶ 3, 17. In 2016, Gilliam moved from her role as a principal to the central office to serve as the director of student services. See SMF ¶ 4; Resp. to SMF ¶ 4. During the 2016–17 school year, the Bertie County Schools experienced severe financial challenges and implemented a reduction in force. See SMF ¶¶ 5–6; Resp. to SMF ¶¶ 5–6. As a result, in June 2017, the Bertie County Schools eliminated Gilliam's director of student services position. See SMF ¶¶ 5–6; Resp. to SMF ¶¶ 5–7. In June 2017, Gilliam appealed the reduction in force to the Board, but the Board did not change the decision. See [D.E. 33-2] 5–6; [D.E. 37-3, 37-4].

After eliminating Gilliam's position, the Board offered Gilliam a classroom teacher position under her 2015 administrator contract. See SMF ¶ 8; Resp. to SMF ¶¶ 8–9. Gilliam's 2015 administrator contract provided that "[d]uring the term of this contract, the employee may be transferred to another position in the school system in the sole discretion of the Board and/or the Superintendent. Transfer of the employee is not a transfer to a lower paying position, and thus not a demotion, if the employee's salary is maintained at the previous salary amount." SMF ¶ 10; Resp. to SMF ¶ 10; [D.E. 37-1] ¶ 8. Because the Board paid Gilliam for twelve months under her administrator contract rather than under a ten-month teacher contract, the Board required Gilliam to work on administrator tasks during the summer months when school was not in session. See SMF ¶ 11; Resp. to SMF ¶¶ 10–11.

In February 2018, Edmonds became the superintendent of the Bertie County Schools. See SMF ¶ 12; Resp. to SMF ¶ 12. At the time, Gilliam was serving as a classroom teacher and working pursuant to her 2015 administrator contract. See SMF ¶ 12; Resp. to SMF ¶ 12. On July 9, 2018,

2

Gilliam filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination alleging her transfer to a classroom teaching position and the assignment of administrator duties to her during the summer months were discrimination against her based on her race, color, sex, and age and as retaliation for her alleged protected activity in June 2017. See SMF ¶ 13; Resp. to SMF ¶ 13; [D.E. 2-10].

In January 2019, the principal position at Bertie Middle School became vacant, and Edmonds appointed Gilliam as the interim principal of Bertie Middle School. See SMF ¶¶ 14–15; Resp. to SMF ¶¶ 14–15. At that time, Edmonds told Gilliam the Bertie County Schools planned to advertise the principal position and interview applicants. Edmonds also told Gilliam that being named interim principal did not guarantee that the Board would select Gilliam for the permanent principal position. See SMF ¶ 16; Resp. to SMF ¶ 16. Edmonds appointed Gilliam to the interim position, in part, because Gilliam was a licensed administrator already employed within the district and receiving administrator pay. See SMF ¶ 15. Thus, Gilliam's appointment saved the district money, when compared to hiring an interim administrator from outside the district. See id.

Gilliam's 2015 administrator contract was set to expire on June 30, 2019. See SMF ¶ 17; Resp. to SMF ¶ 17. North Carolina law provides that local school system superintendents must decide by May 1 of the last year of a school administrator's contract whether to offer the administrator a new four-year contract. See SMF ¶ 17; N.C. Gen. Stat. § 115C-287.1(d).[1] Edmonds

---

[1] N.C. Gen. Stat. § 115C-287.1(d) provides:

> If a superintendent intends to recommend to the local board of education that the school administrator be offered a new, renewed, or extended contract, the superintendent shall submit the recommendation to the local board for action. The local board may approve the superintendent's recommendation or decide not to offer the school administrator a new, renewed, or extended school administrator's contract.
>
> If a superintendent decides not to recommend that the local board of education offer a new, renewed, or extended school administrator's contract to the school administrator, the superintendent shall give the school administrator written notice

3

declined to recommend Gilliam for a new four-year contract and chose not to recommend Gilliam's renewal as an administrator. See SMF ¶¶ 18–19. On April 30, 2019, Edmonds informed Gilliam in writing that she would not recommend that Gilliam receive a renewed four-year administrator contract but stated that she would recommend Gilliam for a two-year classroom teacher contract. See SMF ¶ 19; Resp. to SMF ¶ 19; [D.E. 2-11].

In May 2019, Gilliam appealed Edmonds's recommendation to the Board. See SMF ¶ 20; Resp. to SMF ¶ 20. On May 31, 2019, the Board held a hearing. See SMF ¶¶ 20–21; Resp. to SMF ¶ 20; [D.E. 33-3] 10; [D.E. 33-9] (hearing transcript). At the hearing, Edmonds told the Board that she was not recommending that Gilliam receive a four-year administrator contract for the five reasons: (1) Gilliam had not worked as an administrator for the school system for the majority of the time that Edmonds was superintendent; (2) for the first year of Edmonds's tenure as superintendent, Gilliam served as a classroom teacher; (3) Edmonds only had four months to oversee Gilliam's work as an administrator; (4) Edmonds did not believe that she had enough exposure to

---

of his or her decision no later than May 1 of the final year of the contract. The superintendent's reasons may not be arbitrary, capricious, discriminatory, personal, political, or prohibited by State or federal law. No action by the local board or further notice to the school administrator shall be necessary unless the school administrator files with the superintendent a written request, within 10 days of receipt of the superintendent's decision, for a hearing before the local board. Failure to file a timely request for a hearing shall result in a waiver of the right to appeal the superintendent's decision. If a school administrator files a timely request for a hearing, the local board shall conduct a hearing pursuant to the provisions of G.S. 115C-45(c) and make a final decision on whether to offer the school administrator a new, renewed, or extended school administrator's contract.

If the local board decides not to offer the school administrator a new, renewed, or extended school administrator's contract, the local board shall notify the school administrator of its decision by June 1 of the final year of the contract. A decision not to offer the school administrator a new, renewed, or extended contract may be for any cause that is not arbitrary, capricious, discriminatory, personal, political, or prohibited by State or federal law.

4

Gilliam's work as an administrator to recommend a four-year contract; and (5) Edmonds advised Gilliam when Gilliam became interim principal that this position was an interim position. See SMF ¶ 21; [D.E. 33-9] 6–44, 51–55; [D.E. 33-4] 1–2. At the hearing, Gilliam's counsel argued that the Board should give Gilliam a four-year administrator contract based on her performance in the district. See SMF ¶ 21; [D.E. 33-9] 44–51, 55–62. After the hearing, the Board unanimously voted to accept Edmonds's recommendation and not to renew Gilliam's administrator contract, but the Board offered Gilliam a two-year classroom teacher contract. See SMF ¶ 23; Resp. to SMF ¶ 23; [D.E. 33-3] 11; [D.E. 33-4] 2.

On July 29, 2019, Gilliam filed another EEOC charge of discrimination. See SMF ¶ 28; Compl. [D.E. 2] ¶ 2.[2] On February 27, 2020, the EEOC issued Gilliam a right to sue letter. See SMF ¶ 28; Compl. ¶ 2. On March 20, 2020, Gilliam filed a complaint against the Board and Edmonds alleging age discrimination in violation of the ADEA, retaliation in violation of Title VII, and a violation of the North Carolina Wage and Hour Act. See Compl.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587

---

[2] The record does not contain the 2019 EEOC charge.

5

(1986) (emphasis and quotation omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence" is insufficient; "there must be evidence on which the [factfinder] could reasonably find for the" nonmoving party. Id. at 252.

In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378. Nevertheless, the court is not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." Anderson, 477 U.S. at 251 (quotation omitted). "[C]onclusory statements, without specific evidentiary support," do not create genuine issues of material fact. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998). Only factual disputes that affect the outcome of the case properly preclude summary judgment. See Anderson, 477 U.S. at 247–48.

III.

A.

Gilliam alleges the Board did not renew her administrator contract because of her age in violation of the ADEA. See Compl. ¶¶ 89–102. The Board responds that Gilliam lacks direct evidence of age discrimination and has not established a prima facie case of age discrimination. See [D.E. 34] 11–13. The Board also argues that it declined to renew Gilliam as an administrator for legitimate nondiscriminatory reasons and that Gilliam lacks evidence that these reasons were pretextual. See id. at 13.

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish an ADEA claim in two ways. First, an employee may produce

6

direct evidence showing that age discrimination motivated an employer's adverse employment action. See, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141–49 (2000); Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004), abrogated in part on other grounds by Gross, 557 U.S. at 177–80. Second, an employee may proceed under the McDonnell Douglas burden-shifting framework. See, e.g., Westmoreland, 924 F.3d at 725–26; Mereish, 359 F.3d at 334; Smith v. Flax, 618 F.2d 1062, 1066–67 (4th Cir. 1980).

Gilliam has no direct evidence of age discrimination and proceeds under the McDonnell Douglas framework. To establish a prima facie case of disparate treatment under the ADEA, Gilliam must show that (1) she was a member of the protected class, i.e., "individuals who are at least 40 years of age," 29 U.S.C. § 631(a); (2) she was meeting her employer's legitimate expectations at the time of the adverse employment action; (3) the employer took adverse employment action against her; and (4) the employer took that adverse employment action under circumstances giving rise to an inference of age discrimination. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310–13 (1996); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), overruled in part on other grounds by Gross, 557 U.S. at 177–80; Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 335 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished); Wood v. Town of Warsaw, 914 F. Supp. 2d 735, 739–40 (E.D.N.C. 2012).

The court assumes without deciding that Gilliam demonstrated a prima facie case of age discrimination. The Board, in turn, has met its burden of production and articulated legitimate, nondiscriminatory reasons for declining to offer Gilliam a four-year administrator contract. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506–09 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). As the Board Chair explained in her letter of June 5, 2019, the Board found that Edmonds's recommendation was not arbitrary, capricious, discriminatory, personal, political, or for any other reason prohibited by law. [D.E. 33-4] 1–2. Instead, the Board found that

7

Edmonds based her recommendation on the five reasons Edmonds described in her testimony at the appeal hearing, and the Board voted unanimously to uphold Edmonds's recommendation. See id. Thus, the burden shifts to Gilliam to demonstrate a genuine issue of material fact about pretext and that the Board really made its decision because of Gilliam's age. See, e.g., Gross, 557 U.S. at 180; Reeves, 530 U.S. at 141–49; Burdine, 450 U.S. at 253; Westmoreland, 924 F.3d at 725–26; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006), abrogated in part on other grounds by Gross, 557 U.S. at 177–80; Mereish, 359 F.3d at 334; King v. Rumsfeld, 328 F.3d 145, 150–54 (4th Cir. 2003); Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992).

A plaintiff demonstrates pretext by showing that the defendant's proffered "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." Mereish, 359 F.3d at 336 (quoting Burdine, 450 U.S. at 256); see Wood, 914 F. Supp. 2d at 740. In analyzing pretext, the "crucial issue" is whether "an unlawfully discriminatory motive for a defendant's conduct [exists], not the wisdom or folly of its business judgment." Jiminez v. Mary Washington Coll., 57 F.3d 369, 383 (4th Cir. 1995). Speculation about pretext is not enough. See, e.g., Mereish, 359 F.3d at 336–39. A plaintiff's view of her own performance or talent also is not enough. See Smith, 618 F.2d at 1067. Moreover, "[i]t is not . . . the function of this court to second guess the wisdom of business decisions." E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992); see Mereish, 359 F.3d at 339. "Duty-bound though we are to examine employment decisions for unlawful discrimination, we are not cloaked with authority to strip employers of their basic business responsibilities." Hux, 451 F.3d at 315. Rather, to prevail, Gilliam must demonstrate that "age was the 'but-for' cause of the employer's adverse decision." Gross, 557 U.S. at 176.

Even viewing the record in the light most favorable to Gilliam, no rational jury could find that the Board's reasons were pretextual or that the Board declined to offer Gilliam a four-year

8

contract because of Gilliam's age. Gilliam cites six colleagues who she claims are in comparable positions and whose contracts the Board renewed. Specifically, Gilliam cites Tony Hoggard, William Peele, Danny Perry, Tawanda Smallwood, Daphne Williams, and Tundra Woolard as administrators up for renewal in 2019. See Gilliam Depo. [D.E. 33-2] 10; SMF ¶¶ 30–31; Resp. to SMF ¶¶ 30–31. However, Woolard is six years older than Gilliam, and Perry is seven years older. See Gilliam Depo. at 11. In 2019, the Board renewed the contracts of these two employees who are older than Gilliam. See SMF ¶¶ 29–30. Thus, by definition, the Board's treatment of Woolard and Perry does not evince age discrimination. Cf. O'Connor, 517 U.S. at 312–13. As for Hoggard, Peele, Smallwood, and Williams, they were not up for contract renewal at the end of the 2019 school year and are not proper comparators. See Gilliam Depo. at 11; [D.E. 33-5] (Peele's employment contract); [D.E. 33-8] (Hoggard's, Smallwood's, and Williams's employment contracts). Accordingly, Gilliam's comparator evidence does not create a genuine issue of material fact about pretext or age discrimination. See, e.g., Reeves, 530 U.S. at 141–49; O'Connor, 517 U.S. at 312–13.

Next, Gilliam attempts to recharacterize her age discrimination claim by arguing that her "allegations of age discrimination do not rest solely on her being over the age of forty" but instead that her nonrenewal was age discrimination because it was based on years of service and eligibility for early retirement. [D.E. 38] 13–14. However, seniority or years of service do not equal age and can constitute a nondiscriminatory reason for an adverse employment action. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611–12 (1993) ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age . . . ." (emphasis omitted)); Denio v. Asplundh Tree Expert Co., 92 F.3d 1177, 1996 WL 423125, at *3 (4th Cir. 1996) (per curiam) (unpublished table decision); Davenport v. Anne Arundel Cnty. Bd. of Educ., 998 F. Supp. 2d 428, 434 (D. Md. 2014). Moreover, and in any event, no evidence suggests that Gilliam's seniority or experience played any role in the Board's nonrenewal decision. Even viewing the record in the light most

9

favorable to Gilliam, Gilliam has not created a genuine issue of material fact that "age was the 'but-for' cause of the employer's adverse decision." Gross, 557 U.S. at 176; Reeves, 530 U.S. at 141–49. Thus, the court grants the Board's motion for summary judgment on Gilliam's ADEA claim and dismisses the claim.

B.

Gilliam alleges that Edmonds did not recommend renewing her four-year administrator contract in April 2019 and the Board accepted that recommendation in June 2019 in retaliation for Gilliam's July 2018 EEOC charge. See Compl. ¶¶ 72–88. Gilliam engaged in protected activity in July 2018 when she filed an EEOC charge. See, e.g., 42 U.S.C. § 2000e-3(a); Netter v. Barnes, 908 F.3d 932, 937–38 (4th Cir. 2018). Moreover, the Board's June 2019 decision to not offer Gilliam a four-year administrator contract constitutes adverse action. See Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 63–64 (2006); Strothers v. City of Laurel, 895 F.3d 317, 327–28 (4th Cir. 2018); Kozlowski v. Hampton Sch. Bd., 77 F. App'x 133, 135 (4th Cir. 2003) (unpublished). Thus, the dispute centers on causation.

To prove a Title VII retaliation claim, a plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action." Univ. of Tex. S.W. Med. Ctr. v. Nassar, 570 U.S. 338, 352 (2013); see Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017); Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216–17 (4th Cir. 2016); Huckelba v. Deering, No. 5:16-CV-247-D, 2016 WL 6082032, at *3 (E.D.N.C. Oct. 17, 2016) (unpublished). "This but-for causation requirement is stricter than the lessened causation standard for discrimination claims, under which a plaintiff need only show that [age], race, color, religion, sex, or national origin was a motivating factor for an adverse action by an employer." Netter, 908 F.3d at 938 (quotations omitted); see Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015). This causation standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Nassar, 570 U.S. at 360; see Guessous, 828

10

F.3d at 217. As such, "[n]aked allegations of a causal connection between plaintiff's protected activity and the alleged retaliation do not state a plausible Title VII claim." Huckelba, 2016 WL 6082032, at *3.

To survive summary judgment, Gilliam "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998), abrogated on other grounds by Burlington N. & Santa Fe Ry., 548 U.S. at 68. In some cases, a plaintiff can establish a sufficient causal link by showing "the alleged adverse action occurred shortly after the employer became aware of the protected activity." Id.; see Williams v. Cerberonics, Inc., 871 F.2d 452, 454, 457 (4th Cir. 1989) (four days between adverse action and employer's knowledge of protected activity). Generally, however, "[a] lengthy time lapse" between the protected activity and the adverse action "negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657 (three years); Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021) (three months); Coleman v. Schneider Elec. USA, Inc., 755 F. App'x 247, 250 (4th Cir. 2019) (per curiam) (unpublished) (more than a year); Barnes v. Charles Cnty. Pub. Schs., 747 F. App'x 115, 119 (4th Cir. 2018) (per curiam) (unpublished) (same); Jones v. Constellation Energy Projects & Servs. Grp., Inc., 629 F. App'x 466, 469 (4th Cir. 2015) (per curiam) (unpublished) (nine months); Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (per curiam) (unpublished) (three to four months); Causey, 162 F.3d at 803 (thirteen months); Conner v. Schnuck Mkts., Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (four months too long, by itself, to show causation). Where there is a significant temporal gap, "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007). Moreover, a plaintiff also can rely on direct evidence of retaliation. See, e.g., Netter, 908 F.3d at 938; Foster, 787 F.3d at 249.

11

Almost a year passed between Gilliam's July 2018 EEOC charge and Edmonds's April 30, 2019 recommendation of nonrenewal, the May 2019 Board hearing, and the Board's June 5, 2019 decision to not offer Gilliam a four-year administrator contract. This timing does not create an inference of causation. Nonetheless, viewing the evidence in the light most favorable to Gilliam, Gilliam offers direct evidence of retaliation. See [D.E. 33-2] 7–10. According to Gilliam's deposition testimony, Edmonds told Gilliam sometime between January and April 2019 that Edmonds had talked to the Board about Gilliam's July 2018 EEOC charge, that Edmonds was "ready to move forward and recommend" Gilliam to remain an administrator with a four-year contract, but the Board would not let Edmonds name Gilliam as the principal at Bertie Middle School due to Gilliam's EEOC charge. See id. If a jury were to credit this testimony, the jury could find that the Board retaliated against Gilliam when it declined to renew her four-year administrator contract.

In opposition, the Board notes several serious problems with Gilliam's evidence. See [D.E. 34] 10–11. First, Gilliam never mentioned this alleged conversation at the Board hearing on May 31, 2019, or in her July 2019 EEOC charge. See [D.E. 33-9]. Second, Gilliam never asked Edmonds about this alleged conversation during Edmonds's deposition. Cf. [D.E. 33-1]. Third, Gilliam's description of the alleged conversation in her deposition is ambiguous and somewhat speculative. See [D.E. 33-2] 7–10. Finally, in addition to the Board's arguments, Gilliam pleaded this alleged conversation in her complaint based on "information and belief," which is an odd way to describe an alleged direct statement of retaliatory animus. Compl. ¶ 64.

The Board's arguments have force. A jury may well find that Gilliam is not being truthful about her alleged conversation with Edmonds. However, viewing the evidence in the light most favorable to Gilliam, a genuine issue of material fact exists concerning Gilliam's retaliation claim. A jury will have to decide whether Gilliam is telling the truth. A jury also will have to weigh the credibility of Edmonds and the Board members who made the decision.

C.

Finally, Gilliam makes a claim under the North Carolina Wage and Hour Act. See Compl. ¶¶ 103–15. The claim fails. See N.C. Gen. Stat. § 95-25.14(d). Therefore, the court grants the Board's motion for summary judgment on Gilliam's North Carolina Wage and Hour Act claim and dismisses the claim.

IV.

In sum, the court GRANTS IN PART and DENIES IN PART defendant's motion for summary judgment [D.E. 31]. The court GRANTS summary judgment to defendant on plaintiff's ADEA claim and North Carolina Wage and Hour Act claim. Plaintiff's Title VII retaliation claim survives. The parties shall participate in a court-hosted settlement conference with United States Magistrate Judge James E. Gates. If the case does not settle, the parties shall propose trial dates.

SO ORDERED. This 21 day of March, 2022.

JAMES C. DEVER III
United States District Judge