IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:20-CV-00016-D

| | |
|---|---|
| **Mona Gilliam,**<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>**Bertie County Board of Education,**<br><br>　　　　　　　Defendant. | **Order** |

Mona Gillam has sued the Bertie County Board of Education for retaliatory discrimination, age discrimination, and owed wages after the Board failed to renew her contract as an administrator. Compl., D.E. 2. The trial is scheduled to begin later this year. Tr. Management Order, D.E. 48. In early August, Gilliam served trial subpoenas on two nonparty witnesses: State Superintendent of Public Instruction Catherine Truitt and Director of District Human Capital Thomas Tomberlin. *See* Truitt Subpoena, D.E. 50–1; Tomberlin Subpoena, D.E. 53–1. Both Truitt and Tomberlin have moved to quash, alleging they were improperly served and that the subpoenas impose an undue burden. Truitt Mot. Quash, D.E. 49; Tomberlin Mot. Quash, D.E. 52. For the reasons below, the undersigned grants Truitt's motion to quash (D.E. 49) but denies Tomberlin's (D.E. 52).

I.  **Background**

Gilliam has been an employee of the Board since 2013 as either a school administrator or a teacher. Compl. at 4–7. In 2017, Gilliam learned that her administrative position was being terminated through no fault of her own. *Id.* at 4. She claims that the Board promised to give her priority consideration for other available administrative positions but that it subsequently failed to

do so. *Id.* at 4 –5. Instead, Gilliam alleges that the Board assigned her a position as a social studies teacher without formally changing her title from administrator to teacher. *Id.* at 5. When her administrative contract expired in 2019, the Board declined to renew it. *Id.* at 7.

After appealing her termination to the Board, Gilliam filed her complaint in March 2020. *Id.* at 2. In it, she alleges that the Board discriminated against her in its failure to renew her contract. *Id.* at 10. Gilliam's sole remaining claim is that the Board retaliated against her for filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the Board in July 2019 for not renewing her contract. *See* Order on Mot. Summ. J. at 13, D.E. 41. Gilliam's Title VII claim is scheduled for trial in December 2022. Tr. Management Order at 1.

In August, Gilliam served trial subpoenas on nonparties Truitt and Tomberlin. *See* Truitt Subpoena; Tomberlin Subpoena. Both individuals work for the North Carolina Department of Public Instruction ("DPI"), and they played no part in the Board's decision not to renew Gilliam's contract. Later that month, Truitt and Tomberlin moved to quash the subpoenas, alleging that they were improperly served[1] and that the subpoenas unduly burden them. Truitt Mot. Quash at 1; Tomberlin Mot. Quash at 1. Gilliam counters that Truitt and Tomberlin must testify at trial because they can instruct the jury on state policies and procedures. Resp. Opp'n Truitt Mot. at 5, D.E. 59; Resp. Opp'n Tomberlin Mot. at 4–6, D.E. 61. This testimony, Gilliam argues, will allow the jury to assess whether the Board violated state policy in its decision not to renew Gilliam's contract.

---

[1] The Federal Rules of Civil Procedure require mileage and attendance fees to be served alongside subpoenas. Fed. R. Civ. P. 45(b)(1). At the time of service, Gilliam failed to provide Truitt and Tomberlin the requisite fees. By August 30, however, Gilliam's counsel had tendered the Rule 45(b) fees to Truitt's and Tomberlin's attorney. *See* Resp. Opp'n Truitt Mot., D.E. 59; Resp. Opp'n Tomberlin Mot., D.E. 61. Because Gilliam has now paid the fees, the court will consider the subpoenas properly served.

## II. Discussion

The Federal Rules of Civil Procedure explain the grounds for quashing a subpoena. As is relevant here, a court must quash a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The party moving to quash the subpoena must show that it is entitled to the relief it seeks. *Va. Dep't of Corr.* v. *Jordan*, 921 F.3d 180, 189 n.2 (4th Cir. 2019).

Because nonparties are less intimately connected with a case than those litigating it, however, courts must not draw them "into the parties' dispute without good reason[.]" *Id.* (citation omitted). Ultimately, when considering a motion to quash, a court must decide "whether the benefits of [the subpoena] . . . outweigh the burdens on the recipient." *Id.* (citations omitted). But courts should view nonparty subpoenas more critically than requests for information from party opponents. *Id.*

The Fourth Circuit provides courts a helpful, though not exhaustive, list of considerations when weighing a subpoena's benefits against its burdens.[2] *Id.* at 189–90. The Fourth Circuit urges courts to begin by considering the "marginal benefit" of the subpoena "in litigating important issues." *Id.* at 189. It also suggests that courts gauge the requesting party's need for the information. *Id.* While valuable testimony should be allowed, the requesting party needs to explain why it can't obtain the information from another source. *Id.*

As for burdens, courts should consider monetary expense, privacy interests, and overbreadth. *Id.* at 189–90. In sum, if a subpoena asks for testimony "irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money," the subpoena likely

---

[2] While *Jordan* concerned a motion to quash a discovery subpoena, Gilliam has served trial subpoenas on Truitt and Tomberlin. The analysis, however, is the same. *See* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2455 (3d ed. 2022) ("The protections provided by Rule 45(d) for witnesses subject to subpoenas have today for the most part been generalized to apply to both subpoenas ad testificandum and duces tecum, whether they pertain to a deposition, hearing, or trial.").

constitutes an undue burden. *Cook* v. *Howard*, 484 F. App'x 805, 812 n.7 (4th Cir. 2012). Testimony may be particularly irrelevant when the subpoena's recipient lacks personal knowledge of the dispute. *See* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.

### A. The Truitt Subpoena

At trial, Gilliam seeks to have Truitt explain certain State Board of Education ("SBE") policies on school district employee evaluation criteria to the jury. *See* Resp. Opp'n Truitt Mot. at 5. Because Truitt possesses no relevant information and knows nothing about the dispute between Gilliam and the Board, the subpoena served on Truitt is unduly burdensome.

Truitt has never spoken to Gilliam. Mem. Supp. Truitt Mot. at 5, D.E. 50. She has never worked for the Board, nor did she consult the Board about its decision not to renew Gilliam's contract. *Id.* at 2. While Truitt does serve as the secretary and chief administrative officer of SBE, she played no part in the drafting or revision of any SBE policies related to school district employee evaluations. *Id.* at 4. The relevant SBE policies Gilliam wants Truitt to explain are publicly available, and Truitt disclaims any particular insight that cannot be gleaned from reading them. *Id.* at 5. Truitt knows nothing about the Board's policy manual, Gilliam's employment history with the Board, or the reasoning underlying the Board's nonrenewal of Gilliam's contract. *Id.*

Gilliam counters that, because North Carolina doesn't allow her to appeal the nonrenewal directly to SBE, her "only remedy to receive a fair and impartial trial" is to have Truitt explain the SBE policy to the jury. Resp. Opp'n Truitt Mot. at 5. It is hard to understand why this is the case. Truitt specifically disclaims any special knowledge about the publicly available rules governing local district employees, and it is not her job to apply those rules to situations such as Gilliam's. Even if those rules are in dispute, as Gilliam alleges, Truitt will not be of particular use to the jury because she has had no hand in crafting, revising, or applying them. In short, it seems improbable

4

that Truitt's testimony would provide a "marginal benefit" in resolving the "important issues" at stake in Gilliam's Title VII claim. *See Jordan*, 921 F.3d at 189. Truitt's motion to quash the trial subpoena, then, will be granted.

B.     The Tomberlin Subpoena

As with Truitt, Gilliam proposes to have Tomberlin interpret certain SBE policies for the jury's benefit. *See* Resp. Opp'n Tomberlin Mot. at 4–6. Unlike Truitt, however, Tomberlin would not face an undue burden by complying with the subpoena.

Tomberlin claims that he, too, lacks personal knowledge of Gilliam's lawsuit and the potential conflict between the Board's actions and SBE policy. Mem. Supp. Tomberlin Mot. at 2, D.E. 53. But Tomberlin has discussed Gilliam's case with her and provided some advice on how she should proceed. *See* Tomberlin Decl., D.E. 53–2. Further, Tomberlin's job duties suggest that he is more intimately familiar with the development and application of SBE personnel policies than Truitt. Mem. Supp. Tomberlin Mot. at 1 ("Mr. Tomberlin is tasked with oversight of . . . evaluation and performance of educators, and State standards for public school policies.").

Tomberlin suggests other sources—including the parties themselves—could adequately explain SBE policy. *Id.* at 5–6. There is reason to believe, however, that testimony from Tomberlin will be more useful than information provided by other sources. In a phone conversation, Tomberlin explained the metrics by which local district employees are evaluated to Gilliam's counsel. Resp. Opp'n Tomberlin Mot. at 4. He also helped Gilliam find the SBE policies that correlated with the Board's local evaluation policies. *Id.* And during that conversation, Gilliam claims Tomberlin "made it clear that he could only provide relevant testimony on [] state policies." *Id.*

5

At the very least, then, Tomberlin is an employee of the Department of Public Instruction who has some familiarity with Gilliam's case and the state policies the Board must follow. His personal knowledge of Gilliam's situation, paired with his job duties, increase the likelihood that his testimony will be marginally beneficial compared to other sources. *See Jordan*, 921 F.3d at 189.

Finally, Tomberlin challenges the subpoena claiming that it is too broad. Mem. Supp. Tomberlin Mot. at 6. He contends that "[t]he subpoena does not provide any information about the subject matter of the testimony" Gilliam wants from Tomberlin. *Id.*

This concern is misplaced for two reasons. First, Rule 45 contains no requirement that the subject matter of a trial subpoena be laid out at the time of service. Fed. R. Civ. P. 45(a)(1)(A). When a subpoena summons a nonparty to testify at trial, Rule 45 requires only that it: state the court from which it issued; note the title of the action and its case number; command the recipient to testify at a certain time and place; and include the mandatory language from Rules 45(d) and (e). *Id.*

Second, since Tomberlin has spoken with Gilliam about the issues involved in this lawsuit, he should have some idea about what his testimony will entail. But if he does not, that is a problem that Gilliam should remedy by identifying the topics that she wishes for him to testify about. Otherwise, Gilliam may find herself asking questions that the witness is unprepared to answer, depriving her of potentially probative and helpful information.

In any event, Tomberlin is under no obligation to study up on various policies and procedures before testifying at trial. If Gilliam wanted to obtain DPI's official position on policies and procedures, the appropriate mechanism to do that would have been through a Rule 30(b)(6) deposition. In that setting, DPI would have had to designate someone to testify on its behalf about

its policies. There is no evidence that Gilliam did so during the discovery period, and there is no similar mechanism to compel an organization to designate someone to testify on its behalf at trial.

Since Tomberlin discussed the matters involved in this suit with Gilliam, he likely possesses information that is relevant to the claims and defenses in this case. Thus, there is no basis to quash the subpoena requiring him to appear and testify at trial.[3]

### III. Conclusion

For the reasons outlined above, the undersigned orders that Catherine Truitt's motion to quash (D.E. 49) is granted. Thomas Tomberlin's motion to quash (D.E. 52), however, is denied.

Dated: October 7, 2022

_____
Robert T. Numbers, II
United States Magistrate Judge

---

[3] The court expresses no opinion on the admissibility of any testimony Gilliam may seek to elicit from Tomberlin.